Evans, J.
The plaintiff by her petition herein seeks to establish a trust in certain real state, ancl in the proceeds from the sale of certain other real estate located in this city, and claims that the defendant held the title thereto in her own name in said premises, but that the same ivas held by defendant for the use and benefit of both plaintiff and defendant, share and share alike.
Plaintiff and defendant lived together for a period of about ten years. About five years of this time in the same house at Troy, Ohio, and from the year 1900, and for about five years thereafter they lived together in this city in property at 353 West Eighth avenue, which property is a part of the premises in question, the title to which when purchased was put in the name of defendant. The property in which they resided at Troy was in the name of defendant. This property was sold after they moved to Columbus, for the sum of $2,700, and the money was *482 applied on the purchase price of said Eighth avenue property, together with further sums of money furnished by a mutual male friend of both these parties. Subsequently two other lots were purchased, the title to which was placed in the name of defendant. These two lots were not improved and were purchased for $950 each. The Eighth avenue property was purchased for about $5,000.
Except as to a sum of money, the amount thereof not stated, which plaintiff claims to have inherited from her father’s estate, there is no dispute between these parties but that said mutual friend supplied the money which purchased said three parcels of property located in Columbus, also the property at Troy; that he furnished the houses, and- supplied these parties generally with funds for their necessary living from some time prior to the purchase of the Troy property until about 1905. This mutual friend testifies that he supplied all the money. He did not purchase the property, or any part of it, nor deed it to defendant, and he had nothing to do with the transactions of purchase other than to supply the money and examine the deeds after the purchases were made.
The plaintiff claims that this money was given to her and defendant jointly; that each had a one-half interest in all the money so given, and that they invested the money in said real estate; that the title was placed in the name of defendant with the agreement between them that the survivor was to have the whole estate; that to guard against the heirs at law of defendant taking any title or interest in the event she died first, after they purchased the property at Troy the defendant executed and delivered to plaintiff a mortgage on the property for $4,000. This was about what the property cost, but much more than it sold for. This mortgage was duly recorded, and on account of it not being returned for taxation, these parties were called before the board of review to show cause why it should not be entered for taxation.
Both these parties appeared before the board, and plaintiff and defendant both stated that defendant held this property in trust for plaintiff; that in order to provide against any possible *483 accident, because the title appeared in the name of defendant, defendant had given to plaintiff this taortgage for said sum of $4,000; they stated that the property really belonged to plaintiff, and it having cost about $4,000, that amount was fixed upon; that no money passed, and no money was due thereon. With this explanation the board dropped the matter, and shortly thereafter the mortgage was canceled of record.
Plaintiff claims that the Troy property was purchased with money furnished by her; that the money came in part from her father’s estate, and the balance of it was money she saved from gifts to her by said mutual friend; that she knew this friend some time before defendant did, and that he gave her large sums of money, even provided money to enable her to purchase some business, which she conducted for a time. She claims she sold the business out for about $900, and that this also went towards purchasing the Troy property.
Plaintiff claims that she and defendant agreed that the survivor should take the whole of the Columbus property, and in order to carry this out, on account of the title being in defendant, that they made and executed mutual wills on behalf of each other, and kept them in a"tin box in their Columbus house. She -claims that when the break came between them that defendant carried away both these wills.
The Eighth avenue property was purchased before the Troy property was sold. In order to make a partial payment thereon, both these parties went to. see said friend to get money to make the payment on the property. He counted out $2,000 in cash. Plaintiff claims he handed it to her. Defendant says he turned it over to her. The friend says he does not remember which one he handed it to, but says he intended it for defendant.
The money was taken to Columbus and paid on the property, and subsequently the Troy property was sold and the $2,700 it brought was paid on the purchase price of the Eighth avenue property, and the balance, about $500, was put up by said friend to complete payments.
This mutual friend testifies that he furnished all the money that was applied in the purchase of all of said property, includ *484 ing the Troy property, and that he intended the money to go to the defendant. He admits having given plaintiff money from time to-time covering several years, but says he never gave her any large sums of money. He admits that he told them frequently that they ought to make wills and will the property to each other. He says the reason he did so was because he would rather the property would go to plaintiff than to defendant’s relations.
I have examined the correspondence, all of which consists of letters written to plaintiff, and which are admitted to have been written by said mutual friend, with a view of ascertaining to which party he made these gifts of money, and have considered the letters for that purpose only. In some of them he refers to the property as though he intended the money for both said parties. This is notable in his reference to the plans and specifications for the proposed new buildings on the vacant lots, for which he contemplated furnishing the money. In another he says he is going to tell defendant to sell the lots so as to get money for both these parties to live on, and that when the lots are used up to sell the house and lot they live in, so that both could live on that. He says in a letter he wrote to plaintiff that with economy the lots and house should keep you several years. This was written after the break and after this friend had stated that he was not going to provide them any more money.
In other letters he speaks of the property as though it belonged to defendant, notably in one in which he complains, because the defendant, as he says “threw me away” for another man, and speaks of what he has done for her, and laments -that she does not care'for him now, “or she would move back to the home I gave her.”
The Eighth avenue property was purchased through an agent of this city. This agent testifies that the defendant at that time told him that an old lady by the name of Coolidge, who had lived with her for some time, was furnishing the money with which to buy the property.
The plaintiff’s mother did live with these parties, but there is no other evidence that plaintiff’s mother furnished any of the *485 money. There is much other and further evidence, but I can not take space to refer to it.
I am of the opinion that the evidence establishes the fact that the $2,700 from the sale of the Troy property was placed in said real estate in question, and that, while the title to the Troy property was in the name of the defendant, it was in fact held by her in trust for the plaintiff. The claim of plaintiff that she inherited some money from her father’s estate about that time is corroborated by the testimony of Mr. Burns, her attorney at Troy, who says that plaintiff did inherit quite a sum of money from her father’s estate; also plaintiff’s claim that the mutual friend bought a business for her, which she sold for about $900 and put it in said property, is not disputed. In addition to this the defendant herself said to the board of review that she held said property in trust for plaintiff, and told said board that the property really belonged to Lute Coolidge, the plaintiff.
The evidence of the giving of the $4,000 mortgage, tends to show that defendant so held said property in trust, and was executed, as defendant told said board, to provide against any possible accident, because the title was in her.
This being the case, the property having been sold by said trustee and the proceeds, together with other money, being put into the Columbus property in question, wordd establish a sum definite contributed by the plaintiff to the purchase of said property in question. And, it appears that afterwards when one of the vacant lots was purchased, $100 was borrowed from a neighbor to make a first payment. The loaner does not remember which one borrowed it. Plaintiff says that she did, and said neighbor testifies that this money was paid back to her enclosed in a letter from the plaintiff, who was then in California. Also, the fact that both parties made wills after the purl chase of this property tends, in connection with other evidence, to corroborate the plaintiff in her claim that the property was held by defendant for both of them. As to the contents of said wills, that can only be determined from the testimony of plaintiff that they willed the property to each other, and the testimony of said friend that he frequently advised them to make wills willing the property to each other.
*486 The reason given by the plaintiff why the title was placed in the name of defendant was that plaintiff’s health was bad, but that in the event she survived defendant, she would be protected by the will, and if defendant survived her, she wanted defendant to have the whole estate. And I am also of the opinion that the fair weight of all the evidence proves that said gifts of money was to both said parties.
I have examined all the cases and authorities cited by counsel in their briefs, and°am of the opinion that, by the decisions in Ohio, the evidence in this case establishes an implied or resulting trust as to the real estate in question in favor of the plaintiff. I think that, taking all the circumstances together, a fair and reasonable interpretation of the acts and transactions of these parties shows that a resulting trust may fairly be presumed and implied from their intentions.
The rule never applied in Ohio either before or subsequent to the enactment in this state of the statute of frauds, that either an express or resulting trust could not be established by parol.
As held in Haney v. Gardner, 41 Ohio St., 642, “the creation of a trust in lands by parol is not to be considered as varying the terms of the deed, but only as setting up an independent contract consistent with it.”
It is true that no trust results from a breach of a mere parol contract, that is, if one agrees to purchase land and give another an interest in it, and he does purchase and pay his own money and take the title in himself, no trust could be established on the mere parol promise to hold it in trust for the other.
But that is not this case, for here the evidence shows that a definite sum of money of the plaintiff was contributed by her for the purchase of said property. As Pomeroy in his work on Equity, Section 1037, says, “the resvdting trust in favor of him who pays the purchase money, rests upon the equitable principle that the beneficial estate follows the consideration, and attaches to the party from whom it comes, and when furnished by two or more the trust results in favor of each in respect to an undivided share of the property proportioned to his share of the price.”
*487 It is objected that the money was not applied by the plaintiff at the time of the creation of the trust, that is, that there was not a contemporaneous payment of the purchase money by plaintiff.
It is true that the general rule is that the payment of the money by the cestui que trust at the time of the purchase is indispensable to the creation of such a trust.
But that rule would not apply to the case of a trustee who already had the title in himself to the property of the cestui que trust that was agreed should be sold and the proceeds converted into other property.
Whatever the cause of the delay may have been, it was within the power of the trustee to sell whenever she could get a purchaser, and if she purchased the other property before she sold the former, she could not be permitted to take advantage of that fact to apply said rule to defeat the rights of the cestui que trust, -especially where it would result to the trustee’s personal benefit.
The evidence shows that upon payment of the $2,000 on the purchase price for the property in this city, there was an arrangement made with the grantor to defer payment of the remainder of the purchase price. This gave the parties an opportunity to sell the Troy property and thereby raise the money to meet substantially said deferred payments, as the evidence shows, in my opinion, was their agreed purpose and intention.
Plaintiff could not sell the Troy property without deed from defendant, because the title was in defendant, and the- latter held it in trust for plaintiff. So that the whole transaction, so far as the sale was concerned, the execution of the deed, and realizing the money from the sale was within the power and control of the defendant as trustee, and if the trustee saw proper to secure the purchase of the other property before she sold the former, and afterwards sold the Troy property, and plaintiff then applied it in payment for the property so purchased, it would not, under such circumstances, lie within the power of defendant to have the above stated rule applied, and *488 especially, as in this case, where the defendant herself would be benefited by her own act in controlling the property from which the fund came, and in directing such a course.
C. W. Brewer, for plaintiff.
W. G. Brossman, for defendant.
Without discussing further the law of the ease, I have reached the conclusion that the rules laid down by the leading authorities, and especially the decisions in our own state, are, under the facts established in this case, such as clearly establish a resulting trust in favor of the plaintiff as to said three parcels of property'set forth in the petition.
It is admitted by the pleadings that said lot No. 57 sold for $1,150, and that said property at 353 West Eighth avenue sold for $5,500. I find that the defendant holds the proceeds as trustee for plaintiff; from the said sales of said two parcels for the one-half thereof, to-wit, the sum of $3,325, which said sum, together with interest on said $575, one-half of $1,150, and $2,750, one-half of $5,500, respectively from the dates of said conveyances, I find the plaintiff is entitled to recover from defendant; and I further find that defendant holds in trust for plaintiff the one-hálf interest in said lot No. 56.
A decree in accordance with the above finding in favor of the plaintiff is ordered to be entered herein, together with the costs.